LAW OFFICES OF JON J. AURITT
By: JON J. AURITT, ESQUIRE
I.D. No. 10273
130 E. State Street
Media, PA 19063-3431
(610) 565-7530

Attorney for Plaintiffs,
Frank Wothers and Luis Natal

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Corrections Officer FRANK WOTHERS     :
            and                      :
Corrections Officer LUIS NATAL,      :   No. 10-96
            Plaintiffs           :
                             :
        v.                    :
                             :
Sergeant ALBERT ZISMAN         :
Lieutenant LISA GANNON          :
Sergeant ADRIAN KENNY          :
THE GEO GROUP, INC.,            :
           Defendants       :

**FILED**

APR - 8 2010

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1. This lawsuit combines tort claims under the laws of Pennsylvania and a Civil Rights action pursuant to 42 U.S.C. §1983 brought by Corrections Officer Frank Wothers and Corrections Officer Luis Natal against their employer, The GEO Group Inc. (which operated and managed a privately run prison in Delaware County) and against three other Corrections Officers who rank above them.

2. The rights of Plaintiffs, both employed as prison guards at the George W. Hill Correctional Facility, were violated on February 6, 2007 when they were strip and cavity searched at work without probable cause or even reasonable suspicion that they possessed contraband.

## PARTIES

3. Plaintiff, Corrections Officer Frank Wothers, is an adult individual, who at all times relevant, was employed by The GEO Group, Inc. ("GEO") as a prison guard at the George W. Hill Correctional Facility ("GWHCF") located in Thornton, Delaware County, Pennsylvania.

4. Plaintiff, Corrections Officer Luis Natal, is an adult individual, who at all times relevant, was employed by GEO as a prison guard at GWHCF located in Thornton, Delaware County, Pennsylvania.

5. Defendant, Sergeant Albert Zisman, is an adult individual, who at all times relevant, was employed by GEO as a prison guard at GWHCF located in Thornton, Delaware County, Pennsylvania.

6. Defendant, Lieutenant Lisa Gannon, is an adult individual, who at all times relevant, was employed by GEO as a prison guard at GWHCF located in Thornton, Delaware County, Pennsylvania.

7. Defendant, Sergeant Adrian Kenny, is an adult individual, who at all times relevant, was employed by GEO as a prison guard at GWHCF located in Thornton, Delaware County, Pennsylvania.

8. Defendant, The GEO Group, Inc. ("GEO"), at all times relevant, was a private, for profit company under contract with the County of Delaware and/or the Delaware County Board of Prison Inspectors to operate and manage the George W. Hill Correctional Facility, ("GWHCF"). Defendant's corporate headquarters is One Park Place, 621 Northwest 53rd Street, Suite 700, Boca Raton, Florida 33487.

## FACTUAL ALLEGATION

9. On February 6, 2007, at about 00:15, following the end of roll call which was held in the "mousetrap"at GWHCF, the names of Plaintiffs and fellow Corrections Officer Nathaniel Mitchell were called out by Defendant Sergeant Adrian Kenny. Plaintiffs and Mr. Mitchell were of the belief that they were chosen randomly for a routine pat down (in accordance with their Employee Handbook, but not provided for in their Collective Bargaining Agreement).

10. Instead, the two Plaintiffs, along with Mr. Mitchell, went to a door to exit the "mousetrap" and waited to then proceed down a hallway to a men's bathroom where the random pat downs had taken place in the past. Instead, they were escorted out through a different door and taken by Defendant Zisman to the intake section of the prison. This

required that the three of them pass by Defendant Sergeant Kenny and Defendant Lieutenant Lisa Gannon.  Defendant Gannon told the men to follow Zisman.

11. Upon reaching the intake unit, one after the other, Plaintiffs and Mr. Mitchell were placed into a cell where they were then strip and visually cavity searched by Zisman.

12. No contraband was found on Plaintiffs or Mr. Mitchell.

13. Prior to these searches, neither Defendant Zisman, Defendant Gannon, nor Defendant Kenny had probable cause or even reasonable suspicion to believe that any of these men were carrying contraband.

14. These strip/cavity searches were solely instigated by Defendant Zisman.  If these strip/cavity searches were not solely instigated by Defendant Zisman, they were instigated or conducted at the direction of Defendant Gannon and/or Defendant Kenny or were encouraged and/or conducted with their knowledge, approval or acquiescence. Alternatively, Defendant Gannon's and Defendant Kenny's actions, as described, were the proximate result of the directions they received from Defendant GEO employees, who were superior to them or were the proximate result of the Defendants' reasonable interpretation of GEO's written policy with regard to the searching of Corrections Officers.  This policy is included in the GEO Employee Handbook for GWHCF.  It is found in Section Three, Rules and Regulations, Standards of Conduct, Responsiveness, No. 4, on page 20. A copy of that policy is attached as Exhibit A.  Though both Gannon and Kenny knew that these strip/cavity searches were occurring, neither did anything to halt them.

15. These searches were also the direct result of Defendant GEO's failure to adequately teach and train its employees at GWHCF about respecting the Fourth Amendment rights of fellow employees; and, specifically, that no Corrections Officer could be strip and/or cavity searched unless probable cause exists to believe that the particular prison guard is in possession of contraband; and that in certain instances or during exigent circumstances, at least reasonable suspicion must be present to believe that a guard is carrying contraband before such a search of that guard can take place.

16. Alternatively, and/or in addition, these strip/cavity searches were performed in accordance with the reasonable interpretation of the policy established by Defendant GEO which permits random and routine "searches" of Corrections Officers; and/or these strip/cavity searches were implemented by GEO employees with the direction, knowledge, consent, approval or acquiescence of GEO and/or of policy-making officials at GWHCF and/or at corporate headquarters.

17. Alternatively, and/or in addition, the individual Defendants (and/or any other GEO employees in a superior position to them) reasonably believed that in conducting these strip/cavity searches they were acting within the scope of their employment, and they reasonably believed that these searches were for the benefit of GEO.

18. Defendants Zisman, Gannon, and Kenny knew that the area where the strip/cavity searches took place was not private. Persons walking by or standing by the cell where these searches occurred could look in the windows and observe the searches.

19. It is known that at least one female Corrections Officer observed Plaintiff Natal being strip searched as she passed by the cell. Also, Plaintiffs and Mr. Mitchell were able to and did observe through the windows the strip/cavity searching of the others.

20. As a direct result of being strip/cavity searched, both Plaintiffs suffered substantial humiliation, embarrassment and emotional distress. This humiliation, embarrassment and emotional distress increased due to the ability (and actuality) of others, especially females, being able to observe them during the search.

21. Also, as a direct result of the strip/cavity search, both Plaintiffs suffered anxiety, depression, insomnia, and headaches. Further embarrassment, humiliation and emotional distress was suffered by them when they were subsequently in the presence of Defendant Zisman at work before he left GWHCF; and when fellow Corrections Officers teased and degraded the Plaintiffs about this incident. Some of the conditions Plaintiffs have suffered from due to their being strip/cavity searched are continuing.

22. Both Plaintiffs have received (and were financially responsible for) therapy and medication from their private physicians due to the resulting medical and psychological harm they suffered from the strip/cavity searches.

23. As a direct result of the strip/cavity search, each Plaintiff lost days of work and/or was not able to work overtime that was offered. Such loss of work diminished their incomes.

## COUNTS

### STATE LAW CLAIMS

**COUNT I.  FRANK WOTHERS AND LUIS NATAL vs. SERGEANT ALBERT ZISMAN, LIEUTENANT LISA GANNON, SERGEANT ADRIAN KENNY AND THE GEO GROUP, INC.**

24. Plaintiffs incorporate paragraphs 1 to 23 by reference.

25. At the time of the incident, Defendants Sergeant Albert Zisman, Lieutenant Lisa Gannon, and Sergeant Adrian Kenny were employed at GWHCF as Correctional Officers by Defendant GEO.

26. At all times material, the individual Defendants were working during the course and within the scope of their employment.

27. At all times material, Defendant GEO was a private, for profit corporation which operated and managed GWHCF under contract with Delaware County and/or the Delaware County Board of Prison Inspectors.

28. At all times material, the individual Defendants reasonably believed they were furthering the interests of their employer and acting for its benefit by strip/cavity searching Plaintiffs.

29. At all times material, the individual Defendants believed they were acting in compliance with instructions given to them by one or more of their superiors at the George W. Hill Correctional Facility or with Defendant GEO and/or they believed they were acting in compliance with GEO's policy.

30. The actions of the individual Defendants, as described in this Complaint, were negligent, tortuous and exhibited a lack of due care. These actions were also outrageous, reckless, willful and were committed with deliberate indifference to Plaintiffs' rights of physical and personal integrity and privacy. The strip/cavity searches were assaults committed against Plaintiffs.

31. As the employer of the individual Defendants and of any other employees mentioned in Paragraphs 13, 16, 17 and 28, Defendant GEO is liable for these employees' actions pursuant to respondeat superior.

WHEREFORE, Plaintiffs Frank Wothers and Luis Natal request that damages be awarded to them against all Defendants jointly and severably in an amount in excess of $50,000; and that punitive damages be awarded as well as costs.

## FEDERAL CONSTITUTIONAL LAW CLAIMS

**Count II.   FRANK WOTHERS AND LUIS NATAL vs. SERGEANT ALBERT ZISMAN, LIEUTENANT LISA GANNON, SERGEANT ADRIAN KENNY**

32. Plaintiffs incorporate paragraphs 1 to 31 by reference.

33. At all times relevant, the individual Defendants were acting under color of state law and in their individual capacities.

34. Plaintiffs' rights under the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983, were violated by the individual Defendants when these Defendants caused and conducted strip and cavity searches of Plaintiffs when no probable cause, or even reasonable suspicion, existed for such searches.

5

35. The right of individuals to be free of strip and cavity searches when neither probable cause nor reasonable suspicion are present was clearly established when these searches occurred. It was also clearly established that such searches would be conducted privately, unless the need for security would not allow such privacy.

WHEREFORE, Plaintiffs Frank Wothers and Luis Natal request damages be awarded to them against all individual Defendants jointly and severably in an amount in excess of $50,000; and that punitive damages be awarded as well as costs and reasonable attorney's fees.

**Count III.    FRANK WOTHERS AND LUIS NATAL vs. THE GEO GROUP, INC.**

36. Plaintiffs incorporate paragraphs 1 to 35 by reference.

37. The strip and cavity searches of Plaintiffs, as described in the previous Paragraphs, were the direct result of Defendant GEO's failure to adequately teach and train its employees at GWHCF about respecting the Fourth Amendment rights of fellow employees; and, specifically, that no Corrections Officer could be strip and/or cavity searched unless probable cause exists to believe that the particular prison guard is in possession of contraband; and that in certain instances or during exigent circumstances, at least, reasonable suspicion must be present that a guard is carrying contraband before such a search can take place.

38. Alternatively, the strip and cavity searches of Plaintiffs, as described in the previous Paragraphs, were the direct result of the individual Defendants implementing Defendant GEO's policy pertaining to searches of Corrections Officers as they reasonably understood it or implementing instructions given to them by other GWHCF or GEO employees in policymaking positions.

39. Defendant GEO's failure to adequately train its employees, as described in Paragraphs 15 and 37 and/or GEO's policy, as described in Exhibit A, Paragraphs 16 and 39, demonstrate deliberate indifference on the part of GEO and its policymakers towards its employees, and was the direct cause of Plaintiffs being strip and cavity searched.

WHEREFORE, Plaintiffs Frank Wothers and Luis Natal request damages be awarded to them against Defendant GEO jointly and severably in an amount in excess of $50,000, along with costs and reasonable attorney's fees.

JON J. AURITT
Attorney for FRANK WOTHERS and LUIS NATAL

# EXHIBIT A



# The GEO Group, Inc.

## George W. Hill Correctional Facility

## EMPLOYEE HANDBOOK

**Revision Date:**   08/01/06

2. Failure to respond to an emergency may jeopardize the security of the institution as well as the lives of staff or offenders. Therefore, it is mandatory that employees respond immediately and effectively to all emergency situations.

3. Failure to obey the lawful orders of superiors may jeopardize security of the institution. In an emergency situation, carrying out the orders of those in command is imperative.

4. Routine and random searches of employees and/or their property is GWHCF policy. When the Warden has reason to suspect that any employee is in possession of contraband items, which, if introduced, could endanger the institution, the Warden may authorize a special search of an employee or his/her personal property. Special searches may also be authorized where the Warden has reason to suspect that an employee is removing contraband from the facility.

5. Cooperation by employees during the course of an official investigation is required. Failure by any employee to answer any inquiry fully, truthfully, and to the best of their knowledge will be grounds for disciplinary action. Any attempt to obstruct an investigation will also subject the person to immediate disciplinary action, up to and including termination.

## CODE OF ETHICS

### 1. General Code of Ethics

a. Any effort to realize personal gain through employment with GWHCF, beyond the remuneration provided by the employer, is a violation of GWHCF trust, as is any conduct which would create a justifiable impression that such trust is being violated.

b. Any effort by a person to influence an employee to violate standards of ethical conduct or to engage in conduct which would create a justifiable impression that such trust is being violated is also a violation of ethical standards.

### 2. Conflict of Interest:

It is prohibited for any GWHCF employee to engage in any activity which directly or indirectly constitutes a conflict of interest. A "conflict of interest" exists when a person's private interests interfere in any way with the interests of the Company. The following activities determine a conflict of interest:

a. No employee shall act as attorney, agent, broker, representative or employee for, or receive compensation of anything of value from any firm, person or corporation transacting business of any kind with GWHCF. This includes participation in any litigation or proceeding adverse to the Company, or giving opinion evidence against the interest of the Company.

b. No employee shall represent any person with interest adverse to GWHCF or in conflict with their GWHCF duties or attempt to influence another

20

LAW OFFICES OF JON J. AURITT
By: JON J. AURITT, ESQUIRE
I.D. No. 10273
130 E. State Street
Media, PA 19063-3431                                              Attorney for Plaintiffs,
(610) 565-7530                                            Frank Wothers and Luis Natal

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Corrections Officer FRANK WOTHERS      :
            and                        :
Corrections Officer LUIS NATAL,        :  No. 10-96
                    Plaintiffs         :
                                       :
            v.                         :
                                       :
Sergeant ALBERT ZISMAN                 :
Lieutenant LISA GANNON                 :
Sergeant ADRIAN KENNY                  :
THE GEO GROUP, INC.,                   :
                    Defendants         :

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2010, a copy of the Plaintiffs' Amended Complaint was served by mail upon the following:

John Gonzales, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
620 Business Freedom Center
Suite 300
King of Prussia, PA   19406

_____
Jon J. Auritt
Attorney for Plaintiffs,
Frank Wothers and Luis Natal

7